UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GARLINSKY JEAN, KENNETH HERBERT, ALEXANDER S. RENWART, and DAVID SOTO, on behalf of themselves and all others similarly situated,

*Plaintiff*,

v.

COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT and PATRICK RYDER, in his personal and official capacities,

*Defendants*.

Docket No. _____

Complaint

***JURY TRIAL DEMANDED***

---

Plaintiffs GARLINSKY JEAN, KENNETH HERBERT, ALEXANDER S. RENWART, and DAVID SOTO, on behalf of themselves and a class of others similarly situated, by and though his attorneys, the Law Offices of Frederick K. Brewington, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.      This case is brought to remedy on going, disability and invidious racial discrimination by Defendants in the treatment of male police officers of color with the medical condition known as Pseudofolliculitis, who are members of the Nassau County Police Department.

2.      This is a civil action seeking injunctive relief, equitable relief, monetary relief (including past and on going economic loss), compensatory and punitive damages,

1

disbursements, costs and fees for violations of the Plaintiff's rights, brought pursuant to Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (as amended), 42 U.S.C. §1983, and 1988, and New York State's Human Rights Law, Executive Law Art. 15.

3. Specifically, the Plaintiffs alleges that the collective Defendants engaged in discrimination and retaliation and negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiffs of equal and proper treatment, the appropriate employment opportunities and access to title and pay through acts that were taken against Plaintiffs because of their disability and/or race, color, and national origin, and opposing discrimination. These acts resulted in misrepresentation, misinformation, negative impact regarding Plaintiff, humiliation, embarrassment, depravation of job opportunities, loss of income and retirement benefits, permanent injury and harm and other results which continue to mount.

4. Specifically, the Plaintiffs allege that the collective Defendants engaged in discrimination and retaliation and negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiffs of the right to be able to earn overtime, gain benefit equal to and consistent with other similarly situated police officers in terms of work hours, conditions, pay, overtime, advancement and contact with the public and denying appropriate employment  position and title and pay through acts that were taken against Plaintiffs because of their disability,  race, color, and national origin, gender and opposing discrimination. These acts resulted in misrepresentation, misinformation, harassment, character assassination, negative impact regarding Plaintiffs', humiliation, embarrassment, depravation of job opportunities, permanent injury and harm and other results which continue to mount.

5.      Plaintiffs alleges that the collective Defendants, directly acted and/or allowed its agents, employees, representatives and/or officers to act maliciously and unconstitutionally, enacting discriminatory policies, which caused Plaintiffs  to suffer the following injuries:

- Violations of his various statutory rights, including those protected by American with Disabilities Act;  Title VII of the Civil Rights Act of 1964, Article 15 of the Executive Law of the State of New York (Human Rights Law) §§ 290 and 296, ;

- Violations of his Constitutional rights under the Fourteenth Amendment to the United States Constitution (Fourteenth Amendment) in violation of 42 U.S.C. § 1983,;

- Complete, temporary, or partial loss of reputation;

- Loss of benefits, pay, and future income;

- Prolonged alteration of employment and/or temporary/partial alteration of employment opportunities; and

- Diminished capacity, incurring special, monetary, and compensatory damages.

6.      As demonstrated herein, as viewed by evaluations of the New York State Division of Human Rights and as recognized by Defendants, the medical condition suffered by each of the Plaintiffs is one that occurs largely in Black African-American and Latin-American men and despite being recognized with suffering from Pseudofolliculitis and them having provided clear medical proof of their conditions they have been subjected to improper and discriminatory treatment which is demonstrated by Defendants unfairly, improperly, and unlawfully assigning and limiting Plaintiffs in their ability to full serve as police officers.

7.      Each of the named Plaintiffs have served the People of Nassau County as police officers for a number of years and do so successfully as patrol officers but were stripped of that status and forced to terms and conditions which were not the same as patrol due to the mistreatment by Defendants despite them being fully qualified to serve as patrol officers.

3

8.         Each of the named Plaintiffs are not only fully qualified to serve as patrol officers but have not been able to do that work and overcome the pervasive  discrimination in the Nassau County and its leadership which has decided to take a posture of discrimination and retaliation against Plaintiffs.  Despite each of their impressive backgrounds, Defendants have used their power and authority wrongfully label and render Plaintiffs unable to perform the function of patrol officer due to their medical condition of Pseudofolliculitis and the need to have some facial hair to address that condition.

9.         Said acts were done and continue to be done knowingly with the consent and condonation of the COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT (hereinafter "NCPD" or "DEPARTMENT"), and Patrick Ryder, in his individual and in his official capacity, with the express purpose of targeting, injuring and silencing the Plaintiffs, and generally violating their rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

10.        This is obviously pretext.  As an initial matter, around the same time that Defendants are treating Plaintiffs as they were and are, the City of New York and the New York City Police Department (NYPD), which traditionally addressed the needs of its diverse police force by setting high standards and for addressing the very issue now presented by Plaintiffs by properly accommodating and meeting the special medical conditions which are faced by Plaintiffs, yet Nassau County has sought punish and diminish Plaintiffs.

11.        More than forty years ago, the United States  Department of Justice commenced an action to enjoin the use of discriminatory hiring practices  by Defendants.

12.         The DOJ's complaint focused largely on what then appeared to be the greatest impediment to diversity—the written examination.  It alleged that, through the exam and

other   means, Defendants had "pursued and continue to pursue policies and practices that discriminate against blacks, Spanish-surnamed individuals, and women with respect to employment   opportunities within the police department."  It further alleged that "[u]nless restrained by order   of this Court, defendants . . . will continue to pursue" their discriminatory policies and practices. *See  U.S.* v. *Nassau Cty. Police Dep't*, 77-cv-01881 (E.D.N.Y. Sept. 21, 1977).

13.    The DOJ's lawsuit resulted in the issuance of a consent decree by the United States District Court for the Eastern District of New York that should have remedied the historical pattern of discrimination in Defendants' hiring of police officers.  The consent decree mandated that Defendants "adopt[], and . . . seek in good faith to achieve, the objective of employing blacks, Hispanics and females in all sworn ranks and non-sworn positions within the" Police Department.  And Defendants explicitly recognized that nondiscriminatory selection "should result in the appointment of blacks, Hispanics and females as Police Officers in the NCPD at levels which approximate their proportions in the pool of qualified applicants."

14.    Despite Defendants' awareness of these problems, they have taken no meaningful action.  To the contrary, the tone from the very top of the NCPD is one that accepts and promotes discrimination.  Rather than treating Defendants' legal obligation to promote diversity and equal treatment as an important priority, NCPD Commissioner Patrick Ryder has referred to the consent decree as a   "farce" and described it as a "game that gets played in the numbers." Similarly, after learning of   the troubling police officer hiring statistics, Ryder indicated that he "liked" the system that produced these discriminatory results.  This is no surprise, coming from an official who unjustifiably blamed the lack of diversity on "broken homes" and, as alleged in sworn testimony  in a recent deposition, referred to a Black female ex-police officer as a "f*cking [n-word]."

15.     Defendants have, in sum, discriminated against Plaintiffs and similarly  situated plaintiffs in violation of American with Disabilities Act, Title VII, 42 U.S.C. § 1983 ("Section 1983") and the New York State  Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* ("NYSHRL"). This discrimination has been allowed to continue for far too long and must come to an end.  This court should provide Officers  GARLINSKY JEAN, KENNETH HERBERT, ALEXANDER S. RENWART, and DAVID SOTO, and others like him, with the relief to which they are entitled under the law—including an  equitable, transparent, and fair police officer treatment.

**JURISDICTION**

16.     The Court has jurisdiction over the subject matter of this civil action arising under the United States Constitution pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

17.     This Court is requested to exercise pendent jurisdiction over Plaintiffs' NYSHRL claims pursuant to 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

18.      On January 18, 2022 David Soto dual filed Charge of Discrimination against Defendants with the New York State Division of Human Rights (hereinafter "NYSDHR") and Charge of Discrimination Case No. 520-2022-01981 against Defendants with the EEOC. On September 28, 2022 Alexander S. Renwart dual filed Charge of Discrimination against Defendants with the New York State Division of Human Rights (hereinafter "NYSDHR") and Charge of Discrimination Case No. 116GC300075 against Defendants with the EEOC. On or about October 25, 2022 Garlinsky Jean dual filed Charge of Discrimination against Defendants with the New York State Division of Human Rights (hereinafter "NYSDHR")and the Nassau County Commission of Human Rights and Charge of Discrimination Case No. 520-2023-00537

against Defendants with the EEOC. On or about October 25, 2022 Kenneth Herbert dual filed Charge of Discrimination against Defendants with the New York State Division of Human Rights (hereinafter "NYSDHR")and the Nassau County Commission of Human Rights and Charge of Discrimination Case No. 520-2023-03243 against Defendants with the EEOC.   Each of the Plaintiffs asserting his wrongful discrimination due to the Defendants' violation as to disability and animus on the basis of Plaintiff's race, color, and asserting that they have been retaliated against by Defendants

19.    On or about September 14, 2024, Plaintiff David Soto received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 520-2022-01981.  On or about October 10, 2024, Plaintiff  Kenneth Herbert received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 530-2023-03243. On or about October 12, 2024, Plaintiff  Garlinsky Jean received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 520-2023-00537.   (copies annexed hereto as Exhibit "A"). As of the filing of this complaint, ninety days from the date of receipt of the Notice of Rights to Sue have not yet passed.

20.    As of the filing of this Complaint, Plaintiff Alexander S. Renwart has not yet received his Right to Sue from the EEOC, but reserves his right to join his Title VII claim to this Complaint upon receipt.

**VENUE**

21.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants conduct business and can be found in this District and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

22.

7

**PARTIES**

23.     Plaintiff Garlinsky Jean is a 33-year old Black male who has successfully worked as a Nassau County Police Officer since 2018.  Officer Jean resides in the County of Nassau, State of New York.

24.     Plaintiff Kenneth Herbert is a 33-year old Black male who has successfully worked as a Nassau County Police Officer for more than five years.  Officer Herbert resides in the County of Nassau, State of New York.

25.     Plaintiff Alexander S. Renwart is a 39-year old Black male who has successfully worked as a Nassau County Police Officer for more than eight years. Officer Renwart resides in the County of Nassau, State of New York.

26.     Plaintiff David Soto is a 32-year old Puerto Rican male who has successfully worked as a Nassau County Police Officer for more than ten years. Officer Soto resides in the County of Queens, State of New York. The proposed class includes all non-white applicants to become police officers in Nassau County who were disqualified from consideration by Defendants during the post-exam process.

27.     The proposed class includes persons suffering from the medical condition of Pseudofolliculitis and all non-Black or non-Latino Nassau County Police Officers who have been discriminated due to their disability/medical condition and race or color.

28.     Defendant COUNTY OF NASSAU is a municipality of the State of New York.  It funds, oversees, maintains, manages, supervises, and/or controls several departments, agencies, and employees, including the Nassau County Police Department, and the Commissioner, and was and is the employer of members of the Police Department.  The County is an employer within the definition of the New York State Executive Law and employs over 15 employees.

8

29.   Defendant NASSAU COUNTY POLICE DEPARTMENT is an agency of the  County of Nassau and operates under the direction and on behalf of the County of Nassau.

30.   DEFENDANT PATRICK RYDER is the Commissioner for the Nassau folk County Police Department and is sued in his individual and official capacity, and was at all times herein mentioned supervising members of the Nassau County Police Department, and was employed by the COUNTY OF NASSAU under the direction of Defendants, COUNTY. Ryder was at all times relevant to this complaint acting in furtherance of the scope of his employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY OF NASSAU. At all times mentioned herein, RYDER was a policy maker and decision maker for the County of Nassau and its Police Department.

## FACTUAL ALLEGATIONS

30.   Each of the Plaintiffs are is employed as a Police Officers with Nassau County Police Department. Each Plaintiff asserts that although Defendants granted their request for a reasonable accommodation due to their disability (Pseudofolliculitis), each has been placed on restricted duty whereby they are only assigned administrative duties; unable to work full duty as a police officer, prohibited from working in a sector car, unable to take any additional training provided by the Department and having incurred the loss of countless hours of overtime.

31.   Plaintiffs assert that they have been denied reasonable and available accommodations including but not limited to the use of an Escape Hood, which would suffice as a reasonable accommodation which would allow them to perform the full duties of a police officer, but which use Defendants have refused to authorize.

32.    Plaintiffs have been harassed by their superiors including but not limited to Defendant Ryder making disparaging remarks to them in public, in front of their peers, regarding their grooming, despite their accommodations permitting them not to have to appear clean shaven. Defendants also has required that Plaintiffs recertify their medical condition with a note from their respective physicians on a monthly rather than bi-annual basis.

33.    The Defendants recognizes that the Plaintiffs' condition, Pseudofolliculitis, is a medically recognized condition that primarily affects men of color, albeit males of either Black race/color or Hispanic ethnicity. The Plaintiffs have submitted to Defendants adequate medical documentation substantiating their claims of their conditions.

34.    Plaintiffs assert they have been continually reprimanded for their failure to be clean shaven. As Plaintiffs continued to have to shave, their conditions were exacerbated.

35.    Plaintiffs continued to suffer from ingrown hairs. Upon hearing that the presentation of medical notes might eliminate reprimands, Plaintiffs sought out medical attention.

36.    Despite being able and being cleared to work Full Duty, each of the Plaintiffs were placed on Restricted Assignment for having a shaving accommodation.

37.    Plaintiffs have demonstrated that as opposed to the accommodation of restricted duty, there are other alternative accommodations which would also serve to relieve them of having to be placed on restricted duty, this includes, but is not limited to Defendants authorizing the use of an "Escape Hood" (as opposed to and distinguished from the primary respirator/gas mask).

38.    Plaintiffs are aware that such a device has been previously issued to various police officers, including one or more of the Plaintiffs by Defendants and it was authorized for them to use so they could perform duties that required the use of the respirator mask or other protection.

10

39. For example, Plaintiff Renwart was issued the Escape Hood by the Defendants on December 22, 2021, by the Firearms Unit when he went for his yearly gas mask fit test. He asserts that he passed the gas mask fit test with his 3mm allowed growth of facial hair, but he requested an alternative mask since he knew that they were available. Plaintiff Renwart experienced that once his superiors were aware that he and others had been given the Escape Hood, Defendants did not authorize its continued use. Defendants failed to provide any official documentation as to why the use of the Escape Hood was no longer authorized.

40. Information on the equipment no longer being authorized was simply spread "by word of mouth," from the Police Surgeons and other supervisors that the Police Chiefs and Commissioner Ryder would not allow Plaintiffs and other officers to return to full duty with Shaving Accommodations. Plaintiffs are clear that Defendants actions are about race/ color and appearance using the guise of safety to discriminate against them and others similarly situated.

41. The Escape Hood, as an option, conforms with applicable OSHA regulations and that this equipment would permit Plaintiffs to perform full duty police work.

42. Plaintiffs have learned from discussion with other officers that "approximately 15-16 officers who do not suffer from [Plaintiffs'] condition, who were issued the Escape Hood due to having failed the fit test for their gas mask in 2021." These officers are permitted to work full duty and utilize the Escape Hood while Plaintiffs are not permitted to do so.

43. Plaintiffs have also been subject to harassment based upon disparaging remarks/statements made in open, public forums in front of their contemporaries, regarding them not being clean shaven, despite their having an accommodation waiving having to be clean shaven.

44. One example of what Plaintiffs have been subjected to is what Plaintiff Renwart experienced when he was subjected to inappropriate harassment in public by the Defendant Police

11

Commissioner, Patrick Ryder himself, based on his medical condition. Specifically, on November 3, 2022, Commissioner Ryder arrived at the Departmental Awards Ceremony where Plaintiff Renwart was receiving a Meritorious Award related to his excellent work as a police officer.

45.     Rather than demonstrate his appreciation for Plaintiff Renwart's service to the Department, Commissioner Ryder mocked the Plaintiff. Commissioner Ryder was aware of the Plaintiff's medical condition and inability to shave. Nonetheless, Commissioner Ryder approached Plaintiff Renwart and stated, "What did you forget your fucking razor at home?", and pinched Plaintiff's cheek.

46.     This was extremely demeaning to the Plaintiff Renwart and Commissioner Ryder did this in front of others out in the open. Plaintiff Renwart was embarrassed and felt helpless, as the highest ranking individual in the Department did this to him after he complained of discrimination and sought the protection associated with filing internal and external EEO/NYSDHR complaints.

47.     Plaintiffs are fir that due to their restricted duty assignments they have lost out on opportunities to advance into "specialized units" within the Department.  Each of the Plaintiffs have had an interest in working in special unites and have either not applied knowing that they would be rejected or have applied and been rejected. Since 2018, Plaintiff Renwart has continuously applied for a position within the Emergency Services Unit, which is offered two times a year. No reason has ever been given for his application being denied.

48.      Another clear example is that since 2020, Plaintiff Renwart has applied for a spot within the Firearms Training Unit, which also sends out posting two times a year. Though Plaintiff meets all of the criteria for each respective unit, he has not been given a reason why he has

12

not been accepted. This set of circumstances is recurring for each of the Plainitiffs and year after year in the units to which they apply their ranking continue to move further away from the top of the lists.

49. The non-acceptance into these Units has been marred Plaintiffs' careers as the impact of their disability and the actions of their superior officers, like Commanding Officer (Ryder) and other superior officers purposefully sabotaging their efforts to excel within the Department with disparaging remarks and comments regarding them and their disability.

50. Plaintiffs have been denied acceptance into courses offered by the Department, in which having earned certification in these specialized courses would help them attain future promotional opportunities within the Department. Such courses included the Field Training Officer Course during August 2022, the Drug Recognition Course (involving the enforcement of DWIs) and the Law Enforcement Rifle Training (whereby an officer is paired up with rookie officer).

51. Being placed on restrictive duty has significantly reduced Plaintiffs' earning potential and this restriction is also an adverse work action.

52. Plaintiffs allege that as a result of Defendants having granted their request for a reasonable accommodation, that each one of them have been placed on restricted duty whereby they are only assigned administrative duties, unable to work full duty as a police officer, prohibited to work in a sector car and unable to take any additional training provided by the Department as well as losing countless hours of overtime. Plaintiffs also asserts that they have been harassed by Defendants as it has required them to recertify their conditions with a note from their physician on a monthly basis rather than every six months.

53. Plaintiff Soto has experienced discriminatory treatment.  He has complained about Defendants' policy to his superiors, but it has resulted in him being continued to be assigned

to desk duties and denials of overtime opportunities which are routinely offered to persons who do not have is medical condition and disability and who are white.

54. Like the other Plaintiffs Mr. Soto has lost a range of job duties, loss of income, loss of seniority rights, loss of overtime, loss of opportunity to serve in the full range of job duties, loss of credit in jobs that would allow future progression on the job.

55. Despite their exemplary records and numerous awards for service to the community prior to being placed behind the desk, Plaintiffs are now facing adverse work conditions, financial loss, and life challenges as a result of being restricted from duty. They have missed countless hours of overtime and details such operation overwatch, UBS Arena, school crossings, 2024 Cricket detail and much more.

56. The Plaintiffs have proven themselves to be valuable assets, and their current treatment is limiting their potential, damaging the morale and credibility of increasing diversity in the department. There are many departments in NY and across the US that allow neatly groomed facial hair as it does not stop an officer from performing their sworn duty. This includes the most diverse police department in the City of New York, the NYPD.

57. The decision to place Plaintiffs on restricted duty raises has served to discriminate against them based on race, color and disability.

58. When Plaintiffs have requested a clear understanding as to their mistreatment, the police surgeon responsible for these decisions failed to provide a justification, stating that this issue is above their pay grade and that they are "simply following orders".

59. The four police officer Plaintiffs are men of color and have been placed on restricted duty due to their facial hair, despite having valid medical documentation setting forth why they are not able to have a clean shave.

60.

61. It was later revealed that they believe the restriction was due to concerns of fitting gas masks rather than their original appearance policy.

<u>Defendants' History of Discriminatory Hiring Practices</u>

62. Plaintiffs' treatment is part of Defendants' long-standing pattern of discrimination against non-white applicants in connection with the hiring of police officers.

*The Consent Decree*

63. On September 21, 1977, the DOJ filed an action alleging that the County[5] had "pursued and continue[d] to pursue policies and practices that discriminate against blacks, Spanish-surnamed individuals and women with respect to employment opportunities within the police department," in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e , et seq., . . . and the Fourteenth Amendment to the Constitution of the United States." The action focused on what then appeared to be the principal barriers to diversity— including, in large part, the discriminatory written examination.

64. On April 21, 1982, the Court entered a Consent Decree resolving the litigation, in which the County represented that it "realizes that certain of its selection criteria for hire into and promotion within the Nassau County Police Department . . . , certain of its personnel practices within the NCPD, and the existence of a substantial disproportion between the percentages of

---

[5] This term is defined in the Consent Decree as encompassing the other named defendants in that action, and the references to "County" in this section mirror that definition.

blacks, Hispanics and females in the NCPD as compared [their] percentages . . . within the relevant labor market, may give rise to an inference that discrimination has occurred."

65. "The major purpose of th[e] Decree [was] two-fold: to ensure that blacks, Hispanics and females are considered for employment by Nassau County in the NCPD on an equal basis with white males, and that the present effects of the County's alleged prior discriminatory employment practices against blacks, Hispanics and females be corrected."

66. The County agreed to "adopt[]" and "seek in good faith to achieve, the objective of employing blacks, Hispanics and females in all sworn ranks and non-sworn positions within the NCPD in numbers which roughly approximate their respective interest in and ability to qualify for such employment under non-discriminatory selection procedures and criteria."

67. Specifically, the Consent Decree mandated that the County "shall seek to develop and to utilize qualifications and selection criteria for hire, assignment, transfer and promotion within the NCPD which have no discriminatory impact or which have been validated in accordance with Title VII, and with the Uniform Guidelines on Employee Selection Procedures issued pursuant thereto . . . or successor guidelines."

68. The County agreed that it "hereafter shall fill Police Officer appointments in the NCPD by fair and nondiscriminatory selection from amongst qualified candidates." And the Consent Decree was clear: "It is the expectation of the parties that such nondiscriminatory selection should result in the appointment of blacks, Hispanics and females as Police Officers in the NCPD at levels which approximate their proportions in the pool of qualified applicants."

69. The Consent Decree mandated that the County "immediately adopt and implement an active and continuing recruitment program directed toward increasing substantially

16

the numbers of qualified black, Hispanic and female applicants for the rank of Police Officer in the NCPD in accordance with the purpose and objectives of th[e] Decree."

70.    Although the Consent Decree prescribed quite specific relief to remedy certain problems that had been identified with the hiring process, it did not separately address the racial discrimination inherent in the post-exam process—the focus of the instant action—nor did it tailor relief to address those particularly acute discriminatory practices.

71.    Importantly, the Consent Decree did not rely on blind faith to guarantee the County's compliance.  It instead provided that the County "shall submit to the United States, within twenty (20) days after every four-month period of time following the entry of this Decree, a report which contains" a substantial amount of information that would allow the DOJ—and the County—to track the progress being made.  The information was to include:

a.    The total number of personnel (sworn and non-sworn, full and part-time)  employed by the NCPD as of the end of that four-month period, with a numerical breakdown by  rank (if sworn), job (if non-sworn), race, national origin and sex;

b.    The total number of persons who applied for the position of police officer  during that four-month period, with a numerical breakdown by race, national origin, and sex, the  total number of persons who passed and who failed, respectively, any selection criterion for the   position of police officer used by the County during that four-month period, with a numerical  breakdown by race, national origin and sex for each selection qualification or criterion;

17

c.      The name, race, national origin, sex and date of hire of each person hired  as a police officer recruit in the NCPD's Training Academy during that four-month period; and

d.      The name, race, national origin, sex and date of appointment of each  person who graduated from the NCPD's Training Academy and was appointed a police officer  during that four-month period.

72.      The Consent Decree required that the County "retain during the life of this Decree, and . . . make available to the United States for inspection and copying upon written request, all documents, records, or other memoranda pertaining to the recruitment, selection, hire, assignment, transfer, promotion, demotion, discipline and termination of all personnel in the NCPD."  And, to ensure compliance, it required the designation of "one official . . . who shall be responsible for coordinating and overseeing the County's compliance with this Decree."

73.      The Consent Decree provided that the County "shall be entitled to such dissolution of th[e] Decree, if it has complied with th[e] Decree in all material respects."

## CLASS ACTION ALLEGATIONS

74.      This class action is brought pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking liability-phase injunctive and declaratory relief on behalf of a class of all non-white applicants seeking to become Nassau County police officers who were placed on desk or administrative duties due to the medical condition faced by these Plaintiffs in violation of § 1983 and the  NYSHRL.  Plaintiffs reserve the right to amend the definition of the Class based on discovery or  other factual or legal developments.

75.      Plaintiffs also bring this Class Action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) seeking monetary damages and other make-whole relief on behalf of

18

a Class of all non-white applicants with this disability/medical condition seeking to work fully duty assignments as police officers who were disqualified for consideration by Defendants during their exercise of seeking the accommodation for their conditions in violation of the ADA, Title VII, 1983 and the NYSHRL. Plaintiffs reserve the right to amend the definition of the Class based on discovery or other factual or legal developments.

76. Each of the Plaintiffs are members of the Class they now seek to represent.

77. The members of the Class identified herein are so numerous that joinder of all members is impracticable.

There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members, including:

a. Whether Defendants 'policies or practices for police officers with this medical condition are the subject of discrimination by Nassau County and how the treatment of non-white police officers differs from white officers;

b. Whether Defendants' policies and practices for police officers in Nassau County violate Title VII, § 1983 and/or the NYSHRL;

c. Whether Defendants, using as a pretext of gas masks and appearance as their criteria, intentionally discriminate against non-white officers seeking to maintain their status as full performing police officers in Nassau County;

d. Whether Defendants' practices have a disparate impact on non- white officers with this medical condition seeking to fulfill their roles completely as police officers in Nassau County; and

e. Whether equitable remedies, injunctive relief, and other relief for the Class are warranted to address the discriminatory effects of Defendants' misconduct.

78. The claims of Plaintiffs are typical of the claims of the Class.

79.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.

80.     Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

81.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The Class Members are entitled to injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

82.     Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class Members have been damaged and are entitled to recovery as a result of Defendants' common, uniform, unfair, and discriminatory policies and practices.

**COUNT ONE:**
**EQUAL PROTECTION VIOLATION, 14TH AMENDMENT, 42 U.S.C. § 1983**

83.     The allegations set forth above are incorporated here.

84.     All relevant actions taken by Defendant, including Ryder, and those with delegated authority to act on their behalf were taken under color of law.

85.     Defendants have engaged in an intentional and systematic policy, pattern, and/or practice of discrimination against Plaintiff and the Class in violation of the Equal Protection

Clause through the discrimination and placing Plaintiffs on restricted and limited administrative posts.

86.    The injury sustained by Plaintiff and the Class resulted from a municipal policy or custom.

**COUNT TWO:**
**NYS HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW § 296**
(*Disparate Treatment*)

87.    The allegations set forth above are incorporated here.

88.    Plaintiffs and the Class plead that Defendants are liable under the NYSHRL based on a disparate treatment theory of liability.

89.    Defendants discriminated against Plaintiffs and the Class in the police officer hiring process based on their race and/or national origin.

90.    Plaintiffs and the Class are members of a protected class pursuant to New York Executive Law § 296.

91.    Plaintiffs and the Class were qualified to perform the full functions as police officers in Nassau County.

92.    Plaintiff and the Class were subjected to the adverse employment action.

93.    The adverse employment action taken against Plaintiffs and the Class occurred under circumstances giving rise to an inference of discrimination based on race/color and disability.

94.    The policies and procedures adopted and applied by Defendants were implemented and enforced with an intent to discriminate against non-white applicants because of their race and/or national origin and disability and does so discriminate against them as described above.

95.    The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the NYSHRL.

21

96.    Plaintiffs and the Class request relief as hereinafter described.

## COUNT THREE:
## NYS HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW § 296
### (*Disparate Impact*)

97.    The allegations set forth above are incorporated here.

98.    Plaintiffs and the Class plead, in the alternative, that Defendants are liable for discrimination under the NYSHRL based on a disparate impact theory of liability based on race/color and disability.

99.    Defendants' use of the existing policies and procedures has had an adverse impact on non-white officers with this medical condition in the Police Department.

100.    As a direct result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost employment opportunities, lost overtime, loss opportunities for advancement and lost past and future income, compensation, and benefits.

101.    The foregoing policies, pattern, and/or practices have had an unlawful disparate impact on non-white applicants in violation of the NYSHRL.

102.    Plaintiff and the Class request relief as hereinafter described.

## COUNT FOUR:
## TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e

103.    The allegations set forth above are incorporated here.

104.    All relevant actions taken by Defendants, including Ryder, and those with delegated authority to act on their behalf were taken under color of law.

105.    Defendants have engaged in an intentional and systematic policy, pattern, and/or practice of discrimination against Plaintiff and the Class in violation of Title VII through the discrimination and retaliation and placing Plaintiffs on restricted and limited administrative posts.

22

106. The injury sustained by Plaintiff and the Class resulted from a municipal policy or custom.

## COUNT FIVE:
## AMERICANS WITH DISABILITIES ACT 42 U.S.C. 12101 and subsequent sections

107. The allegations set forth above are incorporated here.

108. All relevant actions taken by Defendants, including Ryder, and those with delegated authority to act on their behalf were taken in violation of the Americans with Disabilities Act (ADA)...

109. Defendants have engaged in an intentional and systematic policy, pattern, and/or practice of discrimination against Plaintiff and the Class in violation of the ADA through the discrimination and retaliation and placing Plaintiffs on restricted and limited administrative costs.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

- Certification of the case as a class action on behalf of the proposed Class;

- Designation of Plaintiffs as representatives of the Class;

- Designation of Representative Plaintiff's counsel of record as Class Counsel;

- A declaratory judgment that the practices complained of herein are unlawful and violate the Equal Protection Clause, Title VII, ADA and the NYSHRL;

- A declaratory judgment that Defendants' refusal to allow Plaintiff to work fully and Class Members for the positions for which they were each qualified was unjustified and based on disability medical condition, race/color and/or national origin;

23

- A preliminary and permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiffs or Class Members based on their disability, race, color and/or national origin or participation in  this lawsuit;

- An order that Defendants institute and carry out policies, practices, and programs that provide  equal employment opportunities for  all  employees regardless of  race, color and/or  national origin, and that they eradicate the effects of their past and present unlawful employment practices;

- An order appointing a monitor to ensure that Defendants comply with the injunction provisions of any decree ordered by the Court;

- An order retaining jurisdiction over this action to ensure that Defendants comply with such a decree;

- An order restoring Plaintiff and Class Members to their rightful positions prior to being restricted following disclosing their disability and seeking accommodations;

- Back pay (including interest and benefits) for Plaintiff and Class Members;

- As to each Count in excess of five million ($5,000,000.00) dollars per plaintiff as well as other damages, costs and attorney's fees.

- All damages sustained as a result of Defendants' conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

- Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

- Pre-judgment and post-judgment interest, as provided by law; and

- Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

110.    Jury trial is required on all matters triable to a jury. Respectfully submitted,

**Dated:  December 10, 2024**

**THE LAW OFFICES OF
FREDERICK K. BREWINGTON**

*Frederick K. Brewington*
Frederick K. Brewington
556 Peninsula Blvd.
Hempstead, NY  11550
516-489-6959

25